IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| TEISHA N. SMITH, ) | |
| for DIAMONDS A. JOHNSON, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 6:04cv020 |
| ) | |
| JO ANNE B. BARNHART, ) | By: Michael F. Urbanski |
| COMMISSIONER OF ) | United States Magistrate Judge |
| SOCIAL SECURITY, ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Teisha N. Smith ("Smith") brings this action on behalf of her daughter, Diamonds A. Johnson ("Johnson") pursuant to Section 205(g) of the Social Security Act, to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383 (2004). In her appeal, plaintiff requests that the court review the medical records of her daughter because she feels that some of the records may have been "overlooked" and because her daughter "continues to get sick day after day...." (Compl. at 1.) Plaintiff indicates that her daughter has had a serious heart operation and that she has a bad case of asthma. Id.

The case was referred to the undersigned magistrate judge on July 26, 2004 for report and recommendation. A hearing was held on February 28, 2005 at which plaintiff was directed to send in any additional materials within thirty days. As of the date of this Report and Recommendation, plaintiff has submitted no new material. Having reviewed the record and after briefing and oral argument, it is recommended that the Commissioner's motion for summary judgment be granted as there is substantial evidence to support his decision.

## FACTUAL AND ADMINISTRATIVE RECORD

Diamonds Johnson ("Johnson") was born on July 18, 1998. On December 29, 1998, the Social Security Agency determined that Johnson was disabled, due to a congenital heart disease, as of the date of her birth. (Transcript, hereinafter "R.," at 16) Shortly after hear birth, the defect in Johnson's heart was repaired. In a November 2, 1998 follow-up visit, Bradley Rodgers, M.D. noted that she was around the 50th percentile in terns of weight and height and that she was then suffering no apparent distress. (R. 163) There was no infection and the shunt tract and exit sites had healed. Id. Johnson's chest and abdominal examinations were normal. Id. Dr. Rodgers was pleased with Johnson's progress. Id.

Johnson was next admitted to the hospital on for treatment of pneumonia on November 17, 1998. (R. 166-67) She was released three days later, "doing extremely well." Id. On May 31, 2001, when Johnson was two and one-half years old, she had a normal well-child visit. (R. 185) She had normal development and could jump, kick a ball, and ride a tricycle. Id. She knew her name, age, and sex, and could scribble. Id. The doctor only prescribed cold medicine at night. (R. 183-85)

Johnson was treated for bronchitis on June 4, 2001. (R. 182) On August 6, 2001, the nurse at plaintiff's pediatrician's office told Ms. Smith that there was no medical reason that Johnson needed Smith to stay home from work to be with her. (R. 183) Johnson was treated for asthma on October 25, 2001. (R. 181) She was prescribed prophylactic asthma medication which she had not been taking. Id. She was re-checked for asthma on October 29, 2001. (R. 180) Her lungs were clear and her heart was regular. Id.

Johnson was again treated for asthma on January 10, 2002. (R. 178) She was doing well by the time of a recheck on January 14, 2002. (R. 176) She was treated for the flu on February

2

1, 2002. (R. 174) At that time, she was not in acute distress. Id. The doctor recommended Motrin or Tylenol for her hay fever. (R. 175) In a February 11, 2002 follow-up visit, her examination was normal and her influenza was resolved. (R. 173)

On October 18, 2002, Johnson was examined by a medical consultative examiner, Craig Gosdin, M.D. (R. 186) He noted that Johnson had not needed nebulizer treatments in months. Id. He also noted that she was going to pre-school, spoke full sentences, was toilet-trained, that she ate and slept well, and that she had no problems running or playing. Id. Johnson was in the 90th percentile for height, the 50th percentile for weight, and her vision and hearing were normal. (R. 187) On the whole, Dr. Gosdin indicated that Johnson appeared normal to him, but for a case of mild eczema. Id. He stated that she did not appear to have any problems with her cardiovascular status and had a normal exercise tolerance. Id. She seemed to be doing well with the asthma medication and her eczema was well-controlled through the use of over-the-counter medications. (R. 188)

At the administrative hearing, Smith testified that Johnson had breathing problems, that her height and weight were "okay," that Johnson could not go outside with other children because of pain in her throat and upper chest, and that she had dry skin that was currently under control. (R. 207-08) Smith testified that no doctor had ordered Johnson not to go outside, but that Smith had told Johnson's school not to let her go outside when it was cold. (R. 209) Smith said that Johnson was a slow learner, but that she would probably not need special education. (R. 209-10) Smith testified that Johnson went to school from 8:30 until 3:30 each day, and that her teachers had told her that Johnson was doing very well in the school. (R. 211) Additionally, Johnson's grandmother testified that Johnson was sick a lot and that Smith needed disability payments to pay for Johnson's medication until Medicaid kicked in. (R. 214)

3

Following this hearing, the ALJ concluded that Johnson was not disabled, concluding that:

> On initial determination of the claimant's application of November 3, 1998, Diamonds A. Johnson was found to be disabled due to a congenital cardiac defect. The notice of favorable decision was dated December 29, 1998, therefore that date is the comparison point date used as the basis for assessing whether or not there has been medical improvement in the claimant's impairment.
>
> Since Diamonds has demonstrated medical improvement and does not have an impairment that meets, medically equals, or functionally equals any impairment listed in Appendix 1, Subpart P, Regulations No. 4, the Administrative Law Judge finds that Diamonds disability was appropriately ceased October 1, 2002.

(R. 12, 14)

## APPLICABLE LAW

The court's review of the Commissioner's final decision is limited to determining whether it is supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "not a large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but rather that which "a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401. It is the duty of the ALJ, and not the court, to make findings of fact and to resolve evidentiary conflicts. King v. Califano, 559 F.2d 597, 599 (4th Cir. 1979). Therefore, even if the court would have decided this case differently, the court must accept the Commissioner's factual findings and decision as conclusive, when the findings are supported by substantial evidence. 42 U.S.C. § 405(g); Perales, 402 U.S. at 390.

In determining that a child is no longer disabled, the Commissioner must follow three steps. First, the Commissioner must determine whether there has been a medical improvement in

4

a claimant's condition. See 20 C.F.R. § 416.994a. A "medical improvement" is any decrease in the medical severity of an impairment which was presented at the time of the most recent favorable decision that the claimant was disabled or continued to be disabled. § 416.994a(c).

Second, the Commissioner must determine whether any impairment or combination of impairments meets or equals the severity of the listed impairment that it met before. The ALJ does this by assessing whether there exist any functional limitations as described in the regulations. These regulations call for a three-step sequential evaluation, under which the SSA will consider (1) whether the child is working; (2) whether the child has a medically-determinable "severe" impairment or combination of impairments; and (3) whether a child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the listings. 20 C.F.R. § 416.924. To establish functional equivalence, a child must have a medically-determinable impairment or combination of impairments that results in marked limitations in two domains or in an extreme limitation in one domain. 20 C.F.R. § 416.926a(b)(1). These domains include: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; ability to care for oneself; and health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i) - (vi).

The third step is to determine whether there is a current disability under the childhood disability regulations. 20 C.F.R. § 416.994a(b)(1-3).

## ANALYSIS

The thrust of Johnson's argument is that she should receive benefits because she needs to take several medications. Simply requiring medication does not constitute a disability under the Act. Indeed, it is clear from the case law that where conditions are treatable through the use of

medication, parties cannot receive disability benefits. See Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984); Schmidt v. Barnhart, 2005 U.S. App. LEXIS 674 at **19-20 (7th Cir. Jan. 14, 2005); Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."). As such, plaintiff's argument is without merit.

The ALJ followed the requisite steps in making his determination that Johnson was no longer disabled and had no disabling impairments. He found that the cardiac impairment for which Johnson had originally received benefits had been repaired. (R. 12) Plaintiff no longer had a cardiac impairment that limited her capacity to exercise as would any normal child, or to participate in a full range of daily activities. He determined that any impairments Johnson suffers from do not meet or medically equal those currently listed in the regulations. The ALJ determined that out of the six "domains of functioning," plaintiff only suffered from any impairment in regard to the 6th domain, and it was "less than marked." (R. 13)

All of the evidence in the record supports the ALJ's conclusions. Plaintiff had a normal well-child visit as a two-year old. (R. 183-85) In 2001, a nurse at the pediatrician's office told Smith that there was no medical reason why she needed to stay home to care for Johnson. (R. 183) Johnson had normal development and appears to have knowledge and play abilities typical of someone her age. (R. 185) In the 2001-2002 period, all of the medical conditions Johnson suffered from were treated successfully. (R. 173-74, 176, 178, 180-82) Regarding Johnson's asthma, she had stopped using her nebulizer and had no problems running or playing at school. (R. 186-87) All of the evidence in the record supports both the ALJ's conclusions that Johnson was no longer disabled due to her cardiac condition as well as his conclusions that she did not have any significant impairment in any of the domains of functioning. (R. 13-15)

Given the deferential standard of review provided under 42 U.S.C. § 405(g), the court must affirm the decision of the ALJ as there is more than enough evidence to support the conclusion that Johnson is not disabled as defined under the Social Security Act. See Pierce v. Underwood, 407 U.S. 552, 565 (1988); King v. Califano, 559 F.2d 597, 599 (4th Cir. 1979). As such, it is the recommendation of the undersigned that the Commissioner's motion for summary judgment be granted.

## CONCLUSION

For the reasons outlined above, it is the recommendation of the undersigned that the Commissioner's motion for summary judgment be granted. The Clerk is directed immediately to transmit the record in this case to the Hon. Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to plaintiff and all counsel of record.

Enter this 14th day of April, 2005.

_____
Michael F. Urbanski
United States Magistrate Judge

7